IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEBRA ANN RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:17CV996 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Debra Ann Ray brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claims for social security disability benefits and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits and an application for supplemental security income in January of 2014, alleging a disability onset date of June 1, 2007, later amended to December 27, 2015. (Tr. 10, 41, 241-247, 258-278.) The applications were denied initially and upon reconsideration. (*Id.* at 118-135, 138-155.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 136-37.) After a hearing, the ALJ determined on March 1, 2017 that Plaintiff was not disabled

under the Act. (*Id.* at 10-53.) The Appeals Council denied a request for review making the ALJ's decision the final decision for purposes of review.[1] (*Id.* at 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged amended onset date of December 27, 2015. (Tr. 13.) The ALJ next found the following severe impairments at step two: degenerative joint disease of the left shoulder, diabetes mellitus,

---

[1] Plaintiff states that she only had sufficient quarters of coverage to remain insured through December 31, 2011. (Docket Entry 15 at 1 citing Tr. 255-56, 41.) Because she amended her onset date to December 27, 2015, she concedes she is not eligible for disability insurance benefits. (*Id.*)

hypertension, left carpal tunnel syndrome, and unspecified mood disorder with depressive and anxiety features. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 14.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform light work, except:

> that she can occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach overhead, reach in all directions, handle, finger, and feel with the left non-dominant upper extremity; avoid concentrated exposure to workplace hazards; be limited to unskilled work; and have frequent interaction with coworkers, supervisors, and the public.

(*Id.* at 16.) At the fourth step, the ALJ determined that Plaintiff was unable to perform her past relevant work. (*Id.* at 22.) Last, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 22-23.)

## IV. ISSUES AND ANALYSIS

Plaintiff raises two issues. Plaintiff first contends that the ALJ erred in finding that she has the RFC to perform light work. (Docket Entry 15 at 3.) Second, Plaintiff contends that the ALJ erred in assessing her subjective complaints. (*Id.*) For the following reasons, neither of these contentions has merit.

### A. The RFC Finding for a Limited Range of Light Work Is Well-Supported.

Plaintiff first contends that (1) "[t]he ALJ erred in finding Ms. Ray can perform the demands of light work," (2) "[t]he ALJ failed to . . . account for Ms. Ray's mental limitations

3

in concentration persistence and pace," and (3) "[t]he ALJ failed to perform the required function by function analysis to support his RFC determination." (Docket Entry 15 at 7, 8.) As detailed below, this argument is unpersuasive.

More specifically, the RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

Additionally, "Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.

4

2000). As to the role of the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit clarified that there is no *per se* rule requiring remand if a function-by-function analysis is not performed. However, the Court held that "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," remand may be appropriate. *Id.* (internal quotation and citations omitted). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling[,]" which "should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations omitted).

Additionally, in *Mascio*, the Fourth Circuit also remanded the matter, in pertinent part, because the hypothetical the ALJ posed to the vocational expert, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace ("CPP"). *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that "an ALJ does not account for a

5

claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (citation omitted). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." *Id.* Although the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, absent such an explanation, remand was necessary. *Id.*

Here, the ALJ considered the entire record, and determined that Plaintiff retained the RFC to perform a reduced range of light work. (Tr. 16-22.) The Court concludes that the RFC is supported by substantial evidence and that the ALJ's narrative discussion of all of the evidence in support of his findings in determining Plaintiff's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8p.[2]

More specifically, with respect to Plaintiff's physical impairments, the ALJ discussed the medical evidence with attention to her functional abilities in terms of work-related physical functioning. (Tr. 17-22.) *See* 20 C.F.R. § 404.1545(b) (describing physical activities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions including manipulative or postural functions, such as reaching, handling, stooping, or

---

[2] *See, e.g., Ashby v. Colvin*, No. CIV.A. 2:14-674, 2015 WL 1481625, at *3 (S.D.W. Va. Mar. 31, 2015) (unpublished) ("There is no explicit function-by-function analysis. But that alone, as the Fourth Circuit explained in *Mascio*, is not enough to require remand. Instead, the court must assess whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record.").

6

crouching). For example, the ALJ discussed Plaintiff's history of treatment for bilateral shoulder pain, as well as diagnostic studies taken in 2014. (*Id.* at 17, 501, 441.) Imaging of the left shoulder dated May 16, 2014 confirmed degenerative joint disease. (*Id.* at 17, 501.) Imaging examined the following month showed no masses or tumors, Plaintiff reported improvement of her symptoms with conservative measures, and upon examination she showed good function of the elbow, forearm, and wrist. (*Id.* at 17, 439.) On June 25, 2014, Plaintiff underwent imaging of the left shoulder that showed mild degenerative changes on the left acromioclavicular joint, with no acute bony abnormality. (*Id.* at 17, 441.) Treatment records during the relevant period showed no tenderness to palpation. (*Id.* at 537, 541.) In September 2016, examination of Plaintiff's back and extremities were normal. (*Id.* at 17, 529.) She reported feeling well on medication. (*Id.* at 17, 519.) Plaintiff also routinely reported normal activities of daily living, including caring for a child. (*Id.* at 305.)[3]

The ALJ also considered the opinions of state agency physicians, E. Woods, M.S., M.D., and Perry Caviness, M.D., who concluded that Plaintiff could perform a limited range of light work, including limited reaching in front and overhead with the left and right upper extremity; and limited handling with the left upper extremity. (*Id.* at 20-21, 63-65, 94-97.) The ALJ gave these opinions partial weight, as the evidence generally supported a limitation for light work. (*Id.* at 21.) Plaintiff generally had normal strength and sensation, with some

---

[3] (*See, e.g.*, Tr. 19, 524 (9/23/2016) (normal bathing, cooking, dressing, driving, eating, managing meds, oral care, shopping, toileting, transferring, walking); 599 (4/18/2016) (same); 607 (1/2/2016) (same); 611 (11/14/2015) (same); 615 (7/13/2015) (same); 619 (6/1/2015) (same); 623 (4/2/2015) (same); 627 (1/5/2015) (same); 631 (11/17/2014) (same).)

7

difficulty reaching. (*Id.* at 21, 410-13, 446, 549, 561, 565.) However, the medical evidence did not include evidence supporting a limitation of the right upper extremity. (*Id.* at 21.)

With respect to Plaintiff's mental impairments, the ALJ discussed the medical evidence with attention to Plaintiff's functional abilities in terms of work-related mental functioning. (*Id.* at 18-22.) *See* 20 C.F.R. § 404.1545(c) (describing mental activities such as understanding, remembering, and carrying out instructions; and responding appropriately to supervision, coworkers, and work pressures in a work setting). For example, the ALJ considered that Plaintiff underwent treatment from 2015 through 2016. (Tr. 573-85, 634-79, 680-713.) On September 23, 2016, Plaintiff reported feeling well and that her medication helped. (*Id.* at 519.) Upon examination, Plaintiff had intact recent and remote memory, judgment, and insight. (*Id.* at 521, 525.) She had a normal mood and affect. (*Id.*)

In fact, Plaintiff frequently demonstrated a normal mental status.[4] The ALJ also noted that Plaintiff reported an ability to shop in stores, handle money, follow instructions, and watch a two-hour movie (*id.* at 15, 307-309) and that she documented the ability to spend time with others (*id.*) and attended various medical treatment appointments, both of which demonstrated cooperativeness (*id.* at 15, 583, 634, 676, 679).

---

[4] (*See, e.g.*, Tr. 19, 599 (4/18/2016) (normal attention, decision making, language, memory, perception, and problem solving); *see also* Tr. 540-41 (1/2/2016) (normal attention, decision making, language, memory, motor, perception, problem solving, visual and spatial; oriented, intact memory, judgment, and insight; normal mood and affect); 544 (11/14/2015); 547-49 (7/13/2015) (negative psychiatric symptoms, normal cognitive status); 552-53 (6/1/2015) (normal cognitive status); 556-57 (4/2/2015); 560-61 (1/5/2015).)

The ALJ also considered the opinion of Glen Zelenak, M.A., LMFTA, who reported that Plaintiff experienced exaggerated negative beliefs about the world around her, distorted cognition, diminished interest in activities, feelings of estrangement from others, hyper vigilance, exaggerated startle response, problems with concentration, sleep disturbance, and fear of being outside of her home without someone accompanying her. (*Id.* at 19, 493.) Mr. Zelenak also opined that Plaintiff's impairment steadily worsened, but had lessened incrementally since beginning therapy. (*Id.* at 19, 494.) He determined that Plaintiff's intense anxiety in new situations would prevent her from traveling alone. (*Id.* at 19, 496.) Mr. Zelenak opined that Plaintiff would not be able to continue or resume work at current or previous employment. (*Id.* at 19, 497.)

The ALJ determined that although the medical evidence of record supported some of Mr. Zelenak's opinion, the record showed that Plaintiff had made progress in her ability to be in open and social situations and that her medication helped with her anxiety attacks. (*Id.* at 20, 44, 652.) The ALJ also considered and gave partial weight to the opinions of state agency consultants, Bonny Gregory, M.D., and Eleanor E. Cruise, Ph.D., who opined that Plaintiff had a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining CPP. (*Id.* at 20, 61, 92.) The ALJ further noted that the evidence generally supported mild to moderate limitations. (*Id.* at 20, 305, 314, 471, 583, 652.) The ALJ's consideration of the medical and other evidence of record in determining Plaintiff's functional abilities is both legally correct and supported by substantial evidence.

9

Plaintiff's arguments to the contrary are not persuasive. Plaintiff points to the opinion of Dr. David Gerlach, M.D., who completed an RFC form concluding that Plaintiff had work-preclusive physical limitations. (Docket Entry 15 at 7.) Yet, Plaintiff fails to acknowledge, much less challenge, the ALJ's decision to give Dr. Gerlach's opinion "partial weight." (Tr. 18-19.) Consequently, Plaintiff has not contested the ALJ's reasons for doing so, which were based upon (1) Plaintiff's ability to complete many activities of daily living, (2) the fact that she demonstrated a normal spine without deformity or tenderness, normal range of motion, no deformities, and no clubbing, cyanosis, or edema, and (3) because of claimant's general normal mental status reports, all of which are described above. (*Id.* at 19.)

Without citation to any record evidence, Plaintiff next contends that she is unable to focus and concentrate in order to complete a workday. (Docket Entry 15 at 7.) However, in her conclusory assertion, Plaintiff fails to address the evidence discussed above demonstrating frequent normal mental status reports, frequent normal activities of daily living, and improvement with treatment and medication.

Next, in contending that the ALJ's mental RFC finding is not supported by substantial evidence, Plaintiff points to Dr. Zelenak's opinion that she has work preclusive social limitations, limitations in dealing with changes in a routine work setting, in the ability to perform simple tasks, and in the ability to navigate through unfamiliar situations. (Docket Entry 15 at 7-8.) As noted throughout the remainder of this Recommendation, however, the ALJ pointed to substantial evidence that Plaintiff's mood disorder responded to treatment and medication and that Plaintiff frequently demonstrated little to no limitations in either her

10

mental status or in her activities of daily living.[5] (*See also* Tr. at 19, 523 (9/23/2016) ("feeling well meds helping"); 531 (4/18/2016) ("No anxiety or depression."); 655 (10/12/2016) (described as "improving," claimant did not "hole up" after experiencing stressor); 659 (8/8/2016) (claimant expressing that she "doesn't have to isolate herself to manage her symptoms"). Nor does Plaintiff contest the ALJ's decision to afford Dr. Zelenak's opinion partial weight.

Last, Plaintiff asserts that the ALJ failed to account for her mental limitations in CPP. (Docket Entry 15 at 8.) The facts of this case, however, are fundamentally different than those of *Mascio*, where there was no explanation as to how the ALJ reconciled the claimant's moderate limitations in CPP with an RFC determination for unskilled work. *Mascio*, 780 F.3d at 637-38. In this case, as demonstrated throughout the course of this Recommendation, the ALJ here accurately noted that the evidence showed that Plaintiff cared for a child, could routinely perform her activities of daily living, routinely had normal mental status reports, could watch movies in two hour increments, could handle money, and could follow instructions. This provides adequate support for the ALJ's conclusion that any limitations in CPP were adequately accounted for by the RFC adopted here, which included a limitation to light, unskilled work and only frequent contact with others.[6] For all these reasons, Plaintiff's arguments are not persuasive.

---

[5] (Tr. 19, 21, 652 (11/29/2016) ("Over the past year, Debra has managed to incrementally increase her tolerance of being in open and social situations."); 519 (9/23/2016) (no psychiatric symptoms), 695 (4/22/2016) (observing affect as calm but expressive, learning to adapt to change, reports more social engagement, willing to use guided imagery to manage panic attacks).)

[6] *See, e.g., Straite v. Berryhill*, 3:16-CV-00006-FDW, 2017 WL 4052170, *4 (W.D.N.C. Sept. 13

11

## B. The ALJ's Analysis of Plaintiff's Subjective Complaints Is Well-Supported.

Plaintiff next contests the ALJ's assessment of her subjective complaints. (Docket Entry 15 at 9-10.) A two-part test governs the evaluation of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-96. While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and heard the claimant's testimony

---

2017) (unpublished) (affirming an ALJ's RFC finding that included only unskilled work to accommodate moderate limitations in CPP); *Bright v. Berryhill*, No. 1:16CV459, 2017 WL 2693513, at *2-5 (M.D.N.C. June 21, 2017) (recommending affirming Commissioner's decision because ALJ's mental RFC explanation justified ALJ's determination that claimant was able to perform light, unskilled work by pointing to record evidence of, among other things, claimant's stable mood, clear thinking, and ability to handle her own finances) (unpublished), *report and recommendation adopted*, No. 1:16CV459, 2017 WL 3263125 (M.D.N.C. July 31, 2017) (unpublished).

and observed her demeanor, the ALJ's determination regarding Plaintiff's subjective complaints is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).[7]

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ stated that he had carefully considered the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 19.) The ALJ therefore discharged his duty under the first step of the *Craig* analysis. Second, at step-two of the *Craig* analysis, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ then provided reasons, backed by substantial evidence, to credit Plaintiff's subjective claims less than fully. By way of non-exclusive example, the ALJ explained that the medical evidence, which he discussed throughout the Decision, was inconsistent with Plaintiff's claims of incapacitating limitations. (Tr. 19-22). *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

First, the ALJ pointed to evidence indicating that Plaintiff's medication helped with her

---

[7] Applicable to ALJ decisions on or after March 28, 2016, the SSA superseded Social Security Ruling 96-7p with Social Security Ruling 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017) ("SSR 16–3p"). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." *Id.* at *2. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of an individual's character," *id.*, and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," *id.* at *1 n.1. Although the ALJ's decision in this case post-dates the effective date of SSR 16-3p (*see* Tr. 24), the ALJ did not reference SSR 16-3p in his recitation of the standards for evaluating a claimant's subjective complaints (*see* Tr. 16, 19). If there is an error here, it is a harmless error, as the ALJ's analysis conformed with SSR 16-3p in that it did not utilize the term "credibility," but rather properly considered whether Plaintiff's statements held consistency with the evidence of record. (*See* Tr. 16, 19.)

panic attacks. (Tr. 19-20, 44.) Second, the ALJ also pointed to evidence demonstrating that Plaintiff's mental health improved with treatment and that she reported feeling well.[8] (*Id.* at 19, 523 (9/23/2016) ("feeling well meds helping"); 531 (4/18/2016) ("No anxiety or depression."); 655 (10/12/2016) (described as "improving," claimant did not "hole up" after experiencing stressor); 659 (8/8/2016) (claimant expressing that she "doesn't have to isolate herself to manage her symptoms"). Third, the ALJ further observed that Plaintiff reported a need for a cane, but her treatment provider did not prescribe this. (*Id.* at 19, 445.) Fourth, the ALJ also pointed to evidence that supports his conclusion that although Plaintiff reported numerous physical limitations, she routinely reported normal activities of daily living.[9] Fifth, the ALJ additionally pointed out that upon examination, despite purported disabling mental limitations, Plaintiff had numerous normal mental status reports.[10] These are all good reasons for partially discounting Plaintiff's subjective complaints of disabling limitations.

---

[8] (Tr. 19, 21, 652 (11/29/2016) ("Over the past year, Debra has managed to incrementally increase her tolerance of being in open and social situations."); 519 (9/23/2016) (no psychiatric symptoms), 695 (4/22/2016) (observing affect as calm but expressive, learning to adapt to change, reports more social engagement, willing to use guided imagery to manage panic attacks).)

[9] (*See, e.g.,* Tr. 19, 524 (9/23/2016) (normal bathing, cooking, dressing, driving, eating, managing meds, oral care, shopping, toileting, transferring, walking); 599 (4/18/2016) (same); 607 (1/2/2016) (same); 611 (11/14/2015) (same); 615 (7/13/2015) (same); 619 (6/1/2015) (same); 623 (4/2/2015) (same); 627 (1/5/2015) (same); 631 (11/17/2014) (same).)

[10] (*See, e.g.,* Tr. 19, 521, 524 (9/23/2016) (oriented; intact recent and remote memory, judgment, and insight; normal mood and affect; normal attention, decision making, language, memory, perception, and problem solving), 599 (4/18/2016) (normal attention, decision making, language, memory, perception, and problem solving); *see also* Tr. 540-41 (1/2/2016) (normal attention, decision making, language, memory, motor, perception, problem solving, visual and spatial; oriented; intact memory, judgment, and insight; normal mood and affect); 544 (11/14/2015); 547-49 (7/13/2015) (negative psychiatric symptoms, normal cognitive status); 552-53 (6/1/2015) (normal cognitive status); 556-57 (4/2/2015); 560-61 (1/5/2015).)

14

Plaintiff's arguments to the contrary are not persuasive. She points to her testimony that she gets panic attacks and cannot leave her home and that when she does leave home she always has someone with her. (Docket Entry 15 at 10 referencing Tr. 44-45.) She points further to her testimony that her medication makes her drowsy, that she has to spend at least half the day lying down due to pain, that her doctor told her not to lift over ten pounds, and that her daily activities are very limited. (*Id.* referencing Tr. 45-48.) Plaintiff contends that this testimony is consistent with the medical evidence and entitled to great weight. (Docket Entry 15 at 10.) Yet, Plaintiff does not acknowledge that the ALJ pointed to substantial evidence demonstrating that she routinely performed her activities of daily living, that she frequently exhibited a normal status (physical and mental), and that her condition improved with treatment and medication. Again, these are all good reasons for partially discounting Plaintiff's subjective complaints of disabling limitations. Accordingly, the ALJ's assessment of Plaintiff's subjective complaints is both legally correct and supported by substantial evidence.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 13) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

August 29, 2018

15